IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM F. JOHNSON and          :
APRIL JOHNSON, on Behalf of     :
Themselves and All Others       :
Similarly Situated,             :
                                :
                   Plaintiffs,  :   3:12-CV-01405
                                :   (JUDGE MARIANI)
v.                              :
                                :
COMMUNITY BANK, N.A. and        :
FIRST LIBERTY BANK AND TRUST,   :
a division of COMMUNITY BANK, N.A., :
                                :
                   Defendants.  :

## MEMORANDUM OPINION

### I.    Procedural History

Presently before the Court is Plaintiffs' and Class Counsel's Unopposed Motion for

Final Approval of Class Settlement, and Application for Service Awards, Attorneys' Fees,

and Expenses (Doc. 32). The settlement stems from a class action lawsuit that alleged

"unfair and unconscionable assessment and collection of excessive overdraft fees" by

Defendants, collectively referred to as "Community Bank." (See Compl., Doc. 1, at ¶ 1.)

Essentially, Plaintiffs alleged that Community Bank re-sequenced the order of debit card

transactions on the debit cards that it issued to customers so as to unfairly maximize

overdraft fees. (See Mot. for Final Approval of Class Settlement, etc., Doc. 32, at 2.) The

bank assesses overdraft fees if a cardholder charges or withdraws more money using his or

her debit card than exists in the corresponding account. (Compl. at ¶ 7.) So, for instance, if a customer makes ten deductions of $10 and followed by an eleventh deduction of $101 from a $100 account, the bank would re-sequence the transaction to deduct the $101 first. This would immediately overdraw the account, so that each of the eleven charges would incur an overdraft charge. If, however, the bank processed the transactions chronologically, only the last one (for $101) would be overdrawn, so the customer would only incur one fee.

Plaintiffs filed this action in July 2012 on behalf of a settlement class defined as "all Community Bank customers in the United States who had one or more Accounts and who, during the [time period from July 20, 2006 to August 15, 2010], incurred an Overdraft Fee as a result of Community Bank's Debit Re-Sequencing." (Settlement Agreement, Doc. 32, Ex. A, at ¶ 37.) At least 48,976 individual account holders are known to be members of the class and were mailed notice of the class action. (See Cameron R. Azari Decl., Doc. 32, Ex. D, at ¶ 16.)

The parties subsequently began settlement negotiations in September 2012. (Doc. 32 at 5.) After one day of mediation, held on January 14, 2013, they produced the settlement agreement presently under review, which they signed on March 2. (Id. at 5-6; see also id., Ex. A (settlement agreement itself).)

The agreement created a settlement fund of $2,500,000, which "shall be used to pay all distributions to Settlement Class Members, any Service Awards to Plaintiffs, and all attorneys' fees, costs and expenses awarded to Class Counsel." (Id., Ex. A, at ¶¶ 41, 44.)

2

Community Bank also agreed not to oppose requests for an additional $5,000 service award for each named Plaintiff, (id., Ex. A, at ¶ 95); for attorneys' fees totaling 33% of the value of the settlement fund, (id., Ex. A, at ¶ 91); or for reimbursement for attorneys' costs and expenses, (id.). The remainder of the settlement fund is required to be distributed pro rata to the settlement class members by direct deposit to those whose accounts may feasibly be so credited Community Bank customers and by mail to all others. (See id., Ex. A, at ¶¶ 68, 72.)

Finally, the settlement agreement yielded certain nonmonetary compensation. For at least the next two years, Community Bank agreed to maintain its current practices of following either a low-to-high or a chronological posting order for debit card transactions, (id., Ex. A, at ¶¶ 77-78); of charging no more than four overdraft fees per account per day, (id., Ex. A, at ¶¶ 79-80); and of refraining from charging overdraft fees for accounts that are overdrawn by less than $5.00, (id.). Counsel for the Defendant testified that the parties agreed to the two year limitation because Defendant does not "know where [the government] regulators will be in two years" and "want[s] the right to review this policy . . . should the regulatory field change." (See Doc. 36 at 10:20-11:4.)

Plaintiffs and class counsel now submit the settlement for Court approval. They request that the Court:

1. Grant final approval to the settlement;

2. Certify for settlement purposes the Settlement Class;

3

3. Appoint Plaintiffs William Johnson and April Johnson as class representatives;

4. Appoint as class counsel Jeffrey M. Ostrow and Jason H. Alperstein of Kopelowitz Ostrow P.A. and Ruben Honik and Kenneth J. Grunfeld of Golomb & Honik, P.C.;

5. Approve service awards to the named plaintiffs;

6. Award class counsel attorneys' fees and reimbursement of expenses; and

7. Enter final judgment dismissing the action with prejudice.

(Doc. 32 at 4-5.)

This Court has already granted requests (2), (3), and (4). (*See* Order Preliminarily Approving Class Settlement and Certifying Settlement Class, Doc. 31, at ¶¶ 4-8.) To the extent that it is necessary to do so, the Court now reaffirms the reasons for its rulings on those requests, which are laid out in Document 31 on the case docket.

As to the other requests, requests (1), (5), (6), and (7) will be granted for the reasons discussed below.

## II.    Settlement Approval

"A class action [whose settlement will bind class members] may not be settled under [Federal Rule of Civil Procedure] 23(e) without a determination by the district court that the proposed settlement is 'fair, reasonable and adequate.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* FED. R. CIV. P. 23(e)(2).

4

The Third Circuit "has identified nine factors to be considered when determining

whether a proposed class action settlement is fair, reasonable and adequate." *In re*

*Warfarin*, 55 F.3d at 785. These factors are laid out in the case *Girsh v. Jepson*, 521 F.2d

153 (3d Cir. 1975), as follows:

> (1) the complexity, expense and likely duration of the litigation; (2) the
> reaction of the class to the settlement; (3) the stage of the proceedings and
> the amount of discovery completed; (4) the risks of establishing liability; (5)
> the risks of establishing damages; (6) the risks of maintaining the class action
> through the trial; (7) the ability of the defendants to withstand a greater
> judgment; (8) the range of reasonableness of the settlement fund in light of
> the best possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974) (internal quotations and alterations omitted). As the Court will now discuss, all of the

*Girsh* factors weigh in favor of settlement approval.

## 1. Complexity, Expense, and Likely Duration of Litigation

The litigation in this case could be very complex, expensive, and protracted, even

compared to other class actions, which are known to exhibit such qualities. The case

involves approximately 50,000 class members contesting an area of financial regulatory law

that, as discussed below, is unclear and in the process of development. Plaintiffs testify

that, if this case were to proceed to trial, they would need to retain data analysts and

experts in the fields of marketing and banking. (*See* Joint Decl. of Jeffrey M. Ostrow and

Kenneth J. Grunfeld in Supp. of Mot. for Final Approval of Class Settlement, Etc., Doc. 32,

Ex. B, at ¶ 28.) The Court finds such testimony credible, as the issue of how banks

5

structure their debit card transactions—and why they chose one structure over others—is well outside the knowledge of the average lay juror. Moreover, as discussed below, (see part V., supra), the Plaintiffs have already spent nearly $23,000 on retained experts, despite the fact that this case settled in the very early stages of litigation.

Finally, the litigation would very likely continue on for many years in the absence of settlement. This action was filed in July 2012, nearly a year and a half from the date of this Opinion. The class was not even certified until June 2013. (See generally Doc. 31.) Accordingly, it is quite likely that, without settlement, the class members would have to wait through years of pretrial motions, trial, and appeals before they saw any remuneration. This factor, then, clearly weighs in favor of approval.

## 2. Reaction of the Class to Settlement

Notice of settlement was mailed to 48,976 individual account holders. (See Doc. 32, Ex. D, at ¶ 16.) Notice by publication was made in local newspapers and on a website created for this case in order to reach other members not included in the original 48,976. (See id. at ¶¶ 22, 25.) Thus, a large number of people were aware of the settlement. But despite the size of the class, counsel testified that not a single class member has objected. (See Official Settlement Approval Hr'g Tr., Nov. 12, 2013, Doc. 36, at 14:23-15:3.) Moreover, at the time of the most recent filing to this Court, only five class members have opted out of the class. (See Proposed Order Granting Mot. for Final Approval of Class Settlement, Etc., Doc. 37, Ex. 1, at 14 (listing individuals who opted out of the settlement);

*see also* Doc. 36 at 15:3-4.) This manifest lack of objection to the settlement weighs heavily in favor of approval.

### 3. Stage of Proceedings and Amount of Discovery Completed

Though this case settled at an early stage, the parties had the opportunity for informal discovery. (*See* Doc. 36 at 8:19-9:5.) The parties testify that the information obtained through discovery allowed Class Counsel to intelligently evaluate the strengths and weaknesses of their case. (*See id.*; Doc. 32, Ex. B, at ¶ 31.) They also testify that discovery was very influential in calculating damages, which ultimately helped foster settlement. (*See* sources cited *id.*) Settlement, meanwhile, was reached after a full day of mediation by an impartial mediator, thus giving the parties more opportunity to objectively evaluate the strengths and weaknesses of their respective case. (*See* Doc. 32, Ex. B, at ¶¶ 7-8.)

All of this means that the parties had sufficient information to come to an informed settlement. The fact that class counsel has litigated many of these overdraft-fee class actions before, (*see* Doc. 36 at 5:16-6:18), further indicates that they were able to approach settlement in an informed manner.

### 4. Risks of Establishing Liability

Absent settlement, Plaintiffs faced serious risks of establishing liability. At the outset, there are the inherent risks and uncertainties that any plaintiff faces in litigating a case all the way through trial and appeal. But even aside from that, Defendants could and did rely

7

on substantial legal arguments to prevent Plaintiffs' recovery. First, Defendants argued that
their practice of Debit Re-Sequencing had been adequately disclosed to the Plaintiffs and
that Plaintiffs had ratified the practice by failing to object. (See generally Answer, Doc. 19,
at ¶¶ 137, 139-144.) Second, in the recent case of Gutierrez v. Wells Fargo Bank, N.A.,
704 F.3d 712 (9th Cir. 2012), the Ninth Circuit found that the National Bank Act preempted
state law attempts to regulate the posting order of debit card transactions, thus potentially
precluding Plaintiffs' recovery, which was based on state statutes and common-law claims.
See Gutierrez, 704 F.3d at 724-25. Both sides in the present case agree that Gutierrez
would be raised if the matter proceeded forward, and that no other circuits have directly
addressed this matter. (See Doc. 36 at 10:2-17, 21:11-22:19.) Though the Court expresses
no opinion as to the merits of these defenses, it is clear that they are substantial and
imposed a level of risk in establishing liability that weighs in favor of settlement.

## 5. Risks of Establishing Damages

Because Plaintiffs face significant risks in establishing liability, it follows that they
would also face significant risks in establishing damages. The same arguments that could
preclude liability could likewise serve to preclude or drastically reduce damages. Therefore,
this factor weighs in favor of settlement as well.

## 6. Risks of Maintaining Class Action throughout Trial

The risk of not maintaining the class action throughout trial was also significant.
Class certification was only granted for settlement purposes and would have been an issue

of contention in the absence of settlement. Class Counsel testified that he believed that

Defendants would contest all the bases for class certification except numerosity. (Doc. 36

at 23:16-23.) Losing class certification would have been another barrier to Plaintiffs'

recovery, and settlement was a reasonable means of alleviating that risk. Therefore, this

factor also weighs in favor of settlement.

### 7.  Ability of Defendants to Withstand a Greater Judgment

The parties have not informed the Court with specificity whether the Defendant could

withstand a greater judgment. (See Doc. 36 at 23:24-25 ("This factor isn't readily known, at

least, to me [i.e., Class Counsel] . . . .").)  Defendant is a small regional bank, and should

not therefore be automatically assumed to be able to pay a greater settlement. However,

even assuming that the bank could pay a greater settlement, the Court finds it reasonable to

settle because, as discussed below, this settlement represents a victory for the class

members in light of the best possible recovery.

### 8.  Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery

Plaintiffs' recovery is $2,500,000 under the settlement agreement from an estimated

$5,000,000 in most likely recoverable damages at trial. (See Doc. 32, Ex. B, at ¶ 42.)

Class Counsel testified that "50 percent [of most likely recoverable damages] . . . is right

around the upper limit that we settle these cases for." (Doc. 36 at 24:6-8.)  He added that

this "is a big deal for us, because of the fact that we settled it after [Gutierrez v. Wells Fargo]

and still were able to sustain the percentages that we required for settlement." (Id. at 24:9-

11.) The Court has no reason to doubt these representations. The Court also agrees that the *Gutierrez* decision added an element of uncertainty that reduced the likelihood of recovery. Fifty percent of the recoverable damages at trial is therefore reasonable and weighs in favor of settlement.

## 9. Range of Reasonableness of Settlement Fund in Light of All Attendant Risks of Litigation

This final factor weighs in favor of approval for all the reasons discussed above. Litigation in this matter would have been costly and protracted. It would also involve a complicated area of law that would require significant expert testimony and that would be far beyond the knowledge of the average lay juror. Finally, it would be subject to serious and significant legal defenses at the class certification, summary judgment, trial, and appellate stages, which could drastically reduce if not utterly preclude Plaintiffs' recovery. At each successive stage of litigation, the class would be subject to a great number of risks, many of which may not be apparent now but would only come to light as litigation progresses. In light of this, a settlement for half of the most likely recoverable damages is certainly reasonable and represents a respectable victory for the Plaintiffs.

## III.   Service Awards to the Named Plaintiffs

Next, Class Counsel requests a $5,000 award to be given to each of the two Named Plaintiffs. (*See* Doc. 32 at 29.)

> Factors to consider when assessing incentive awards are: (a) the risk to the plaintiff in commencing suit, both financially and otherwise; (b) the notoriety and/or personal difficulties encountered by the representative

10

plaintiff; (c) the extent of the plaintiff's personal involvement in the suit in terms of discovery responsibilities and/or testimony at depositions or trial; (d) the duration of the litigation; and (e) the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

*Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *6 (E.D. Pa. 2004) (citing *In re Plastic Tableware Antitrust Litig.*, 1995 WL 723175, at *2 (E.D. Pa. 1995)). This is not a formal test, but merely represents some of "the reasons courts cite for approving such awards." *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 121 (E.D. Pa. 1994).

The Johnsons' award was agreed upon in paragraph 95 of the Settlement Agreement. (*See* Doc. 32, Ex. A, at ¶ 95.) According to Class Counsel, the Named Plaintiffs provided assistance to counsel and to the class by "(1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; and (3) participating in conferences with Class Counsel." (*Id.*, Ex. B, at ¶ 44.) They were also prepared to assist in formal discovery and to appear and testify at trial, neither of which became necessary. (*Id.*)

These services appear somewhat minor. There is also no evidence that Named Plaintiffs took on any personal risks through their role in this action.

Nonetheless, it is undeniable that the class action itself brought benefits to the class, and it is quite likely that the Named Plaintiffs meetings with Class Counsel helped counsel investigate and litigate this matter. For helping the other class members realize these benefits, the Named Plaintiffs deserve some kind of award. Moreover, the Court does not

11

believe that the proposed total award of $10,000 (or 0.4%) of a $2,500,000 settlement fund is unreasonable. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit. *See, e.g., Craig v. Rite Aid Corp.*, 2013 WL 84928, at *13 (M.D. Pa. 2013) (collecting cases).

## IV.   Attorneys' Fees

Finally, Class Counsel seeks attorneys' fees and reimbursement for costs and expenses. The Settlement Agreement provides that "Community Bank agrees not to oppose Class Counsel's request for attorneys' fee of up to thirty-three percent (33%) of the value of the Settlement, as well as reimbursement of costs and expenses incurred in connection with the Action." (Doc. 32, Ex. A, at ¶ 91.) Structuring attorneys' fees via this "percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)).

The Third Circuit has held that a "district court should consider seven factors when analyzing a fee award in a common fund case." *In re Rite*, 396 F.3d at 301. These factors are:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

"The factors listed above need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *Gunter*, 223 F.3d at 195 n.1.

As discussed below, all factors weigh in favor of approval in the present case.

## 1. Size of the Fund and Number of Persons Benefitted

The Settlement Fund is approximately $2,500,000, (*see* Doc. 32, Ex. A, at ¶ 41), to be distributed *pro rata* to approximately 50,000 class members, (*see id.*, Ex. D, at ¶ 16). As discussed above, the Settlement Fund is estimated at 50% of the most likely recovery. This in itself is a meaningful benefit. Given the natural economic preference for certain and immediate recovery over payments that are speculative and delayed, settling for $2,500,000 in the present may certainly be preferable to most class members than risking years of uncertain litigation in order to potentially double their money.

Settlement confers certain nonmonetary benefits on both class members and non-class members as well. The class's nonmonetary benefits are discussed at page 3, *supra*. But all account holders, whether class members or not, benefit from the changes that this lawsuit and others similarly positioned have wrought in the broader banking

13

industry. Seemingly as a result of the environment created by these class actions,

banks are increasingly abandoning their high-to-low sequencing policies. (Cf. Doc. 36 at

9:6-12, 11:10-24.) Despite the fact that Community Bank had discontinued its offending

policies before this particular action was commenced, (see generally id.), the general

willingness of classes like the present one to commence class action lawsuits is

undoubtedly a factor in influencing banks to change their policies for the benefit of all

customers. Therefore, this factor weighs in favor of approval.

### 2. Absence of Substantial Objections by Members of the Class

As discussed above, despite the large number of class members, not a single

class member has objected to settlement, (see Doc. 32, Ex. B, at ¶ 49), and only five

class members have opted out, (see Doc. 37, Ex. 1, at 14.) Accordingly, this factor

weighs heavily in favor of approval.

### 3. Skill and Efficiency of the Attorneys Involved

As to the skill and efficiency of the attorneys involved, the Court's statement in a

recent class action settlement opinion, Creed v. Benco Dental Supply Co., 2013 WL

5276109 (M.D. Pa. 2013), applies equally here:

> Considering the potential for this case to turn into a multi-year litigation,
> class counsel [have] done a good job of negotiating a quick settlement that
> more than adequately compensates the class. This indicates that class
> counsel [are] in fact both skilled and efficient. [They have] navigated an
> unclear area of law to produce an award for the class that comes close to
> the full extent of [Community Bank's] liability and that led to the creation of

14

better [debit card transaction policies for all Community Bank's customers], whether they [are class members] or not.  Accordingly, this factor weighs in favor of approval.

*Creed*, 2013 WL 5276109, at *5.

## 4. Complexity and Duration of Litigation

This case involves a complicated area of law.  It is complicated both in the sense that issues of banking and financial regulation are naturally complex, and also in the sense that the Circuit Court opinions in the field are still in the nascent stages of development, as illustrated by the *Gutierrez* decision, discussed *supra*.  Though this case settled relatively quickly, a speedy settlement was never a certainty.  Indeed, the potential for settlement to not occur at all—or to only occur after months or years of expensive and time-consuming litigation—is a risk that class counsel assumed when they decided to take this case.  By the same token, counsel risked not only losing out on settlement but, after protracted litigation, losing out on any recovery at all, or only receiving a recovery that would not adequately compensate either themselves or the class for the significant efforts expended.  Counsel should not be penalized for avoiding these pitfalls and settling the case early.  Indeed, they deserve compensation for incurring these risks from the outset.  Accordingly, this factor also weighs in favor of approval.

## 5. Risk of Nonpayment

Class Counsel represent that they undertook "to prosecute this complex case entirely on a contingent fee basis." (Doc. 32, Ex. B, at ¶ 55.) Again, this presents a significant risk, for all the factors discussed in the immediately preceding section. In light of the complexity of the case and the defenses available to Community Bank, it is not difficult to imagine scenarios in which recovery could be drastically reduced or precluded altogether—whether at the class certification, summary judgment, trial, or appellate stages. Consistent with this Court's Opinion in *Creed v. Benco, supra*, the Court finds that a "fee of one-third of the settlement is appropriate to compensate counsel for risks [they] took to secure significant benefits for the class." *See Creed*, 2013 WL 5276109, at *6. Accordingly, this factor weighs in favor of approval.

## 6. Amount of Time Devoted to the Case by Class Counsel

Class Counsel represent that they spent 591.90 hours of work on this case. (*See* Doc. 32, Ex. B at ¶ 66.) So receiving 33% of the Settlement Fund (or $825,000) would result in an aggregate hourly rate of $1,393.82 for class counsel. This is a high ratio of compensation sought to hours worked. However, the Court agrees with class counsel that the Court's reasoning on this issue in *Creed v. Benco* applies to the present case. (*See* Doc. 36 at 32:9-33:14.) In *Creed*, the Court wrote:

> Class counsel represents that his office has spent 350.9[1] hours working on the case. While this results in a high hourly rate of compensation, this

---

[1] It should be noted that even though class counsel in *Creed* spent fewer hours on the case, counsel's effective hourly rate was also slightly lower. Class counsel in *Creed* sought $333,333, which

factor does not militate against settlement given the risks that counsel incurred when accepting this case, as discussed above.

Moreover, simply judging the attorney's settlement award by the amount of hours that class counsel worked overlooks the fact that the class itself has an interest in speedy litigation. Even if settlement had been effected six months after the time at which it actually was effected, it is unlikely that the class members would have received a greater recovery, whereas counsel's expenses and time expended would only have increased. This would allow a calculation producing a lower hourly rate for counsel, but it would not confer any additional benefit on the class. Counsel should therefore not be penalized for settling early—when the ratio of attorney's award to time spent is relatively high—if delaying settlement would lower his hourly rate but would not result in gains to the class that counsel serves.

*Creed*, 2013 WL 5276109, at *6. Accordingly, this factor does not weigh against

settlement.

## 7. Awards in Similar Cases

An award of one-third of the settlement is consistent with this Court's prior

decisions and with cases decided throughout the Third Circuit. *See id.* at *6; *see also*

*Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472, at *5 (M.D. Pa. 2008)

(collecting cases). Accordingly, this final factor weighs in favor of approval as well.

## 8. Lodestar Cross-Check

Even after analyzing the above factors, the Third Circuit suggests that "it is

'sensible' for district courts to 'cross-check' the percentage fee award against the

---

results in an effective hourly rate of $949.94. However, the Court finds that the same reasoning applies in both cases. To the extent that the two cases differ factually, their differences are slight and do not call the underlying principles into question.

17

'lodestar' method." *In re Rite Aid*, 396 F.3d at 305 (citing *In re Prudential*, 148 F.3d at 333). "The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *Id.*

In this case, class counsel testify to an aggregate lodestar hourly billing rate of $471.08 for 591.90 hours of work. (Doc. 32, Ex. B, at ¶ 66.) This hourly billing rate— which the Court finds reasonable based on counsel's demonstrated skill and experience[2]—results in a lodestar of $278,832.25. The settlement agreement of $825,000 gives a lodestar multiplier of 2.96: that is, the settlement gives class counsel 2.96 times the lodestar amount.

The Third Circuit has stated "the principle that 'multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (quoting *In re Prudential*, 148 F.3d at 341). For all the reasons discussed above, the Court does not find that class counsel's requested fees—which result in a multiplier slightly higher than the median of the Circuit's identified common fund cases—are unreasonable. Those reasons have been discussed at length, but, briefly summarized, include (1) the inherent

---

[2] For a discussion of counsel's experience in Overdraft Fee litigation, see generally Doc. 36 at 7:4-23, 24:12-23. The Court has already discussed the factors relevant to analyzing counsel's skill in this Opinion at part IV.3, *supra*.

complexity of Overdraft Fee litigation in general; (2) the uncertainty injected into Overdraft Fee litigation by the Ninth Circuit's *Gutierrez* decision; (3) the concomitant risks to counsel, who agreed to compensation on a contingent-fee basis; (4) the high recovery by the settlement class, evaluated both at its face value and as a percentage of the most likely recovery at trial; and (5) the benefits to all non-class-member bank customers nationwide whose banks have changed their ordering policies as a result of the environment created by litigation such as the present one.

Accordingly, the Court believes that counsel's lodestar multiplier is reasonable under the facts of this case, and therefore weighs in favor of approval of counsel's requested fees.[3]

## V.   **Expenses**

In addition to attorneys' fees, counsel request $36,366.49 as reimbursement for "certain litigation costs and expenses." (Doc. 32 at 44.) Counsel represent that these expense consist of:

---

[3] The Court's approval of attorney's fees based on the unique facts of this case should not be understood as the expression of an opinion that a motion for attorney's fees premised on an hourly rate in this range, either by way of fee agreement or lodestar calculation, will always be deemed reasonable or will always be approved by this Court. Rather, as this Court stated in *Creed v. Benco*:

> In every case where the filing of a motion for attorney's fees is authorized, whether the case is brought on behalf of an individual or is one where class certification is granted, each such request for attorney's fees must be evaluated in light of the nature, complexity, and duration of the case and the time and effort expended by counsel in achieving a successful resolution, together with the Third Circuit's seven-factor test, laid out above.

*Creed*, 2013 WL 5276109, at *7 n.1.

1. $22,825.00[4] "in fees and expenses for experts, including Kevin G. Jewell, whose analysis was necessary to determine the damages for the Settlement Class in the Action and to properly identify members of the Settlement Class and allocate the Settlement Fund;

2. $6,575.00 in mediation costs;

3. $6,416.49 in travel costs; and

4. $550.00 for the Court's filing fee.

(Doc. 32, Ex. B, at ¶ 47.)

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

The Court finds that these fees are reasonably and appropriately incurred in the course of litigation. Counsel seeks reimbursement only for necessary large expenses and does not try to squeeze money out of the class by charging for things like photocopies, Westlaw and Lexis usage, or telephone bills, even though they would be legally entitled to do so. *See, e.g., id.* Moreover, the expenses incurred were not out of

---

[4] Though the Joint Declaration lists expert expenses as "$22,825,000," (*see* Doc. 32, Ex. B, at ¶ 47), the Motion for Settlement Approval lists it as $22,825.00, (*see* Doc. 32 at 44.) The Court interprets the number in the Joint Declaration as a typographical error. It does so for obvious reasons, including the fact that the $22.8 million sum would result in a wildly different calculation of expenses from the $36,366.49 requested in both documents.

line with the reasonable market prices of the services procured, nor do they take up a large percentage of the settlement fund. *Cf. id* (approving expenses totaling approximately 4% of settlement fund); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 151 (E.D. Pa. 2000) (approving expenses totaling approximately 1% of settlement fund, which is equivalent to the present reimbursement). The fees were also adequately documented in the Joint Declaration by class counsel. (Doc. 32, Ex. B, at ¶ 47.)

## VI.  Conclusion

For the reasons discussed above, the Motion to Approve the Settlement, and Application for Service Awards, Attorneys' Fees, and Expenses (Doc. 32) is **GRANTED**. A separate Order follows.

Robert D. Mariani
United States District Judge

21